Estate of Frank L. Gray, Deceased, Ethel F. Gray, Executrix v. Commissioner.
Estate of Frank L. Gray v. Commissioner
Docket No. 29500.
United States Tax Court
1951 Tax Ct. Memo LEXIS 121; 10 T.C.M. (CCH) 741; T.C.M. (RIA) 51257; August 28, 1951
*121 In the estate tax return of the decedent, petitioner reported the value of the stock shares held by decedent as $123,420 or $255 per share. Respondent determined their fair market value to be $134,276.12 or $277.43 per share. Held: Respondent's valuation of stock approved for failure of proof of error. Earle W. Carr, Esq., 82 Devonshire St., Boston, Mass., for the petitioner. Joseph Landis, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion This is a proceeding for the redetermination of a deficiency in estate tax in the amount of $200.84. The main issue involves the fair market value to be ascribed to 484 shares of stock held by petitioner's decedent on the date of his death. There was a secondary issue relative to the expenses connected with this proceeding which has now been settled by stipulation. Findings of Fact The portions of the facts that were stipulated are so found and made a part hereof. The petitioner is the Estate of Frank L. Gray, Deceased. Gray died September 24, 1946, a resident of Gardiner, Maine. The estate tax return under review was filed with the collector of internal revenue for the district of Maine, and the Federal estate tax of *122 $43,068.17, called for therein, was paid on December 3, 1947. The Gray-Hildreth Company (hereinafter sometimes called the company), was organized under the laws of Maine on June 29, 1906, with an authorized and issued capital stock of 500 shares of common stock having a par value of $100 each. Frank L. Gray (hereinafter referred to as decedent), was president and manager of the company from 1918 to the date of his death, and during the period 1941 to 1946 he received a salary therefrom of $2,600 per year. At the date of his death on September 24, 1946, he owned 484 shares of the capital stock of this company. Prior to March, 1940, the company was in the lumber business and operated a grist mill. Since that time its business has consisted of wholesaling groceries and tobacco. In addition to the income derived from this source it has also received rent from real estate owned by it, and dividends and interest on securities which it held. The gross sales, net income before Federal income and declared value excess profits taxes, and Federal income taxes of the company, as reported on its returns for the years 1941 to 1946, inclusive, were as follows: Net Income Before
Fed. Income
Federal Income
Net Income
Year
Gross * *123 Sales
and DVEP Tax
and DVEP Tax
After Taxes
1941
$234,082.07
$4,856.04
$ 788.94
$4,067.10
1942
271,733.23
3,603.16
707.08
2,896.08
1943
262,319.50
3,879.98
800.26
3,079.72
1944
240,346.37
2,617.58
461.28
2,156.30
1945
245,099.56
4,285.44
868.42
3,417.02
1946
326,163.98
6,455.63
1,194.13
5,261.50
The income of the company from rents, dividends, and interest during the years 1941 to 1945, was as follows: 1941
1942
1943
1944
1945
Rent
$1,371.63
$1,457.46
$1,299.96
$1,431.96
$1,323.96
Dividends
1,271.95
941.25
883.75
993.75
1,040.04
Interest
127.55
The rent received by the company was derived from about half of the building owned by the company which was leased to an unaffiliated concern, and the securities held consisted of listed stocks and United States Government Series G bonds in the face amount of $12,000. The fair market value on September 24, 1946, of the real estate, store and office equipment, and automotive equipment owned by the company was $13,279.50, and of the bonds and other investments was $36,593.58. The balance sheets of Gray-Hildreth Company, as reflected by its books on December 31, 1945 and December 31, 1946, were, respectively, as follows: ASSETS
12/31/45
12/31/46
Cash
$ 47,507.21
$ 42,510.22
Accounts Receivable (Net)
6,653.93
7,907.30
Inventories [1] *124 26,386.28
36,154.50
Investments in Gov't Obligations [2]
12,000.00
12,000.00
Other Investments [2]
16,588.76
16,588.76
Depreciable Assets [3]
4,655.19
3,371.66
Land
500.00
500.00
Prepaid Insurance
256.11
162.63
Total Assets
$114,547.48
$119,195.07
LIABILITIES
Accounts Payable
$ 2,048.59
$ 1,108.97
Capital
Capital Stock
50,000.00
50,000.00
Earned Surplus
62,498.89
68,086.10
Total Liabilities and Capital
$114,547.48
$119,195.07
The books of the company were not closed as of the date of decedent's death and no physical inventory was taken as of that date. The accountant for the company, Charles W. Howard, estimated the net equity of the company based on market value of its assets on the date of decedent's death, as follows: ASSETS
Cash
$ 51,004
Accounts receivable (net after bad
debt reserve of $576)
15,798
Inventory
24,502
Real Estate (rented)
6,000
Real Estate (used in grocery business)
6,000
Store and Office Equipment
500
Auto
781
Securities
36,594
$141,179
LIABILITIES
Bills Payable
$6,330
Income Tax Accrual
879
7,209
Net Equity ($267.94 per share)
$133,970 The amount of $15,798 estimated above to be the accounts receivable of the company on September 24, 1946, includes approximately $11,200 owed it by the decedent. Howard was not associated with the company during the years 1941 through 1946, having become its accountant after December, 1946. What knowledge he had of the affairs of the company prior to his association was that acquired from his examination of its books and his acquaintance with it and the individuals constituting it. Howard estimated that a liquidation *125 of the company, started on the date of decedent's death, would have resulted in a realization of $237.93 per share. He had no experience with the voluntary liquidation of solvent corporations unpressed by creditors. The ratio between sales of the company and the cost of goods sold varies slightly from time to time. It is different for different lines of merchandise and varies slightly from month to month. Such ratio would be affected by close-out sales of lots of merchandise. There has been no liquidation of the company since the death of the decedent. In decedent's estate tax return, petitioner reported the value of the stock held by decedent as $123,420 $255or per share. Respondent determined this value to be $134,276.12 or $277.43 per share. In the petition, petitioner asserted the value to be $183.16 per share and claimed a refund of approximately $14,000. At the trial petitioner took the position that the value was $195 per share, and, now, on brief, argues it to be $200 per share. Opinion VAN FOSSAN, Judge: The main issue in this proceeding requires a determination by us of the fair market value to be placed upon certain shares of stock possessed by the decedent at the time of *126 his death. There are available no sales or bid and ask quotations in regard thereto. On the day he died, decedent was the owner of 484 out of a total of 500 shares outstanding of the stock of the Gray-Hildreth Company. The company was organized in 1906, and from 1918 until his death decedent was its president and manager. Since 1940 the company has been exclusively in the wholesale grocery and tobacco business, but a substantial portion of its income has come from dividends and interest on certain securities which it held and from rent from real estate which it owned. The fair market value of such securities and real estate is not herein dispute. The average net income reported for the five taxable years preceding that of decedent's death was $3,128. No dividends have been paid on the stock of the company since 1932. The determination of the respondent is presumed to be correct and the burden is on the petitioner to prove it erroneous. This, in our opinion, petitioner has failed to do. There is no single or controlling method for determining the fair market value of the stock of a closely owned corporation. Various methods and criteria may be employed. Asset value, annual earnings, *127 dividends paid, sales of comparable stock, efficiency of management, liquidation value, opinions of qualified experts, and many other factors may be taken into consideration. Here, after careful study of the record, and employing our best judgment, we are not persuaded that any of the several values proposed by petitioner is more nearly correct than is the value determined by the respondent. The proof being in such a status, we have no alternative. We affirm the Commissioner. The parties have stipulated the expenses for attorneys' fees, accountants' fees, and other expenses in connection with the litigation. Such expenses paid or payable are deductible from the gross estate. Cf. Mary A. B. Du Pont Laird, et al., Executors, 38 B.T.A. 926. They will be properly reflected in the Rule 50 recomputation. Decision will be entered under Rule 50. Footnotes
*. After returns and allowances.
1. Lower of cost or market. 2. Cost. ↩
3. Net after reserve for depreciation.↩